**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **In re** <br><br> **CTC COMMUNICATIONS GROUP, INC.,** et al <br><br>                    **Debtors** <br><br> ──────────────────────── <br><br> **THE CTC LITIGATION TRUST,** <br><br>                    **Plaintiff** <br><br> v. <br><br> **ROBERT J. FABBRICATORE,** <br> **KATHERINE D. COURAGE, et al.,** <br><br>                    **Defendants** | **Chapter 11** <br> **Case No. 02-12873 (PJW)** <br> **(District of Delaware)** <br><br> **(Jointly Administered)** <br><br><br><br><br> **Adversary Proceeding** <br> **No. 05-01441-RS** |

**MEMORANDUM AND ORDER**

Before the Court are two motions seeking dismissal of this adversary proceeding for failure to state a claim upon which relief can be granted. The plaintiff is a litigation trust established in the underlying bankruptcy cases. The moving parties are ten of the seventeen defendants in the adversary proceeding and are also former directors of the debtors.

In the adversary proceeding, the litigation trust claims that the directors breached their fiduciary duties to the debtors and their shareholders thereby causing them harm for which the litigation trust may recover against the directors. In their dismissal motions, the directors respond that the litigation trust has failed to allege facts sufficient to support its claims against them. The litigation trust opposes dismissal.

At issue, then, is whether, on the facts alleged in the complaint commencing the adversary proceeding, the litigation trust clearly cannot recover against the directors under any viable theory. For the reasons set forth below, I find that the directors have not made this showing, and I therefore deny the dismissal motions.

## Procedural Status

On October 2, 2004, the litigation trust commenced this adversary proceeding in the United States Bankruptcy Court for the District of Delaware, where the underlying bankruptcy cases are being jointly administered ("Delaware Court"). On February 23, 2005, at the request of the litigation trust and two of the defendants, the Delaware Court transferred the adversary proceeding to this Court. On November 22, 2005, the litigation trust amended the complaint and requested a status conference which I held on December 15, 2005. That status conference occasioned a procedural order establishing a schedule for responsive pleadings to the amended complaint. In response, the directors filed the dismissal motions which are the subject of this decision; the other seven defendants answered the amended complaint. On March 16, 2006, I held a hearing on the dismissal motions and took them under advisement. I now make my ruling.

## Background

A.  *The CTC Bankruptcy Cases*

On October 3, 2002, CTC Communications Group, Inc., a holding company, and CTC Communications Corp., its operating subsidiary, commenced separate Chapter 11 cases in the Delaware Court. On October 9, 2002, two affiliates of these debtors also commenced separate

Chapter 11 cases in that court, where these four cases are now being jointly administered.[1]

CTC began its business life in 1981 as an interconnect provider, supplying and installing telephone equipment for business customers. In 1984, CTC extended its business to sales agency for NYNEX Corp. and then Bell Atlantic (which became Verizon). In 1994, CTC became a reseller of long-distance telecommunications services and in 1998 a reseller of local telecommunications services and an integrated communications provider. As the decade drew to a close, the capital borrowings that funded CTC's business expansion became a burden that occasioned a financial decline that resulted in the Case.

On November 20, 2003, after a not-atypical (but nonetheless fairly rapid) round of administrative, operational, financial and litigation activities in the Case, the Delaware Court confirmed CTC's plan of reorganization whereby CTC restructured its debt, transferred its ownership to an outside investor and resumed its business operations outside bankruptcy ("Plan").

B.    *The Litigation Trust*

Under the Plan, a litigation trust is established for the benefit of CTC's general unsecured creditors ("Trust"). The Trust is vested with various rights, powers and duties including to pursue causes of action against CTC's former directors for prepetition acts and omissions ("Director Actions"). The Director Actions expressly exclude causes of action against former directors to the extent they are released from liability for such acts and omissions under the Plan.

The parties to the adversary proceeding appear to accept the standing and the authority of the Trust to commence the adversary proceeding. In any event, I find that the adversary

---

[1] Hereinafter, for convenience, I refer to the Chapter 11 cases as "Case" and to the four debtors as "CTC".

3

proceeding is within the contemplation of the Trust's authority under the Plan and its implementing documentation.

C.    *The Complaint*

As to the directors, the adversary proceeding rests on two separate but related sets of allegations, which may be summarized thusly: Robert Fabbricatore, CTC's founder, chairman and chief executive officer, looted CTC while the directors stood by and did nothing.

More particularly, the Trust's allegations portray a pervasive misuse and abuse of CTC and its assets by which Fabbricatore is alleged to have caused CTC to do the following (among other self-serving transactions): (a) contract with a Fabbricatore-controlled company to out-source various aspects of CTC's business operations (some of which CTC itself could have profitably performed), and did so on terms unfavorable to CTC and favorable to Fabbricatore; (b) lease real estate from a Fabbricatore-controlled company in circumstances where CTC itself could have acquired the property on favorable and fully financed terms yet wound up with an unfavorable long-term lease; (c) lease an apartment in New York City paid by for CTC but restricted to the personal use of Fabbricatore and his family; (d) maintain Fabbricatore's yacht, horse farm and vacation home at CTC's expense; (e) lease a yacht from a Fabbricatore-controlled company at CTC's expense but for the personal use of Fabbricatore and his family; (f) provide CTC aircraft for the personal use of Fabbricatore and his family and at CTC's expense; and (g) employ Fabbricatore family members who provided few if any services for such employment. A sorry saga, if true.[2]

Further, the Trust's allegations portray a board inattentive to the point of abdication, failing in the most elemental oversight, neither monitoring nor inquiring into Fabbricatore's

---

[2]Fabbricatore denies the Trust's allegations.

4

activities, docilely accepting whatever explanation he proffered regarding those activities (including no explanation at all).

D.    *Dismissal*

In seeking dismissal, the directors argue as follows: (a) the Trust's allegations do not support its claim that the directors acted or failed to act in breach of their fiduciary duties; (b) even if the Trust's allegations do support such a claim, their acts and omissions constitute, at worst, a breach of their duty of care; (c) they are protected from personal liability for a breach of their duty of care (x) by the business judgment rule, (y) by the exculpatory clause in the CTC charter and (z) as to four directors, by a release effectuated under the Plan; and (d) the Trust's allegations do not support its claim that the directors acted or failed to act in breach of their duties of loyalty and good faith, which would be a necessary predicate to overcome the protections of the business judgment rule and the exculpatory clause.

The Trust argues for the sufficiency of its allegations, contending that (a) neither the business judgment rule nor the exculpatory clause are properly deployed in a Rule 12(b)(6) setting where, as here, they are matters outside the complaint and in the nature of affirmative defenses[3]; and (b) its allegations regarding loyalty and good faith breaches support a cognizable claim in that the directors are alleged to have utterly failed to ensure that an adequate information and reporting system was established to monitor and provide oversight for Fabbricatore's activities.

## Discussion

A.    *The Dismissal Standard*

The directors seek dismissal of the complaint for failure to state a claim upon which relief

---

[3] The Trust does not challenge as an affirmative defense the release argument raised by the four directors but rather disputes it on the merits. The Court addresses this issue below.

can be granted. Fed.R.Civ.P. 12(b)(6). The standard for dismissal on such grounds is long-established. "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957). The analytical framework for such determination is also well-settled: the Court must "take the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. v. Ponce Federal Bank,* 958 F.2d 15, 17 (1st Cir. 1992). See also *In re Walt Disney Co. Derivative Litigation,* 825 A.2d 275, 285 (Del. Ch. 2003). Ultimately, the dismissal motions test not the sufficiency of the *proof* of the matters alleged but the sufficiency of the *allegations* to state a cause of action.

B.    *The Business Judgment Rule*

The business judgment rule is a presumption that, in making a business decision, directors act in good faith, on an informed basis, honestly believing that their action is in the company's best interests. *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3rd Cir. 2005); *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. Supr. 1984). To invoke the rule's protection, directors have a duty to inform themselves of all material information available to them. *Aronson v. Lewis*, 473 A.2d at 812. In a Rule 12(b)(6) context, the plaintiff "must plead that he overcomes the presumption created by the rule." *Tower Air*, 416 F. 3rd at 238.

Proceeding on that basis, that is, considering whether the Trust's complaint is subject to dismissal in the face of the invocation by the directors of the protections afforded by the business judgment rule, I find that the Trust has alleged precisely the facts necessary to overcome the presumption created by the rule. In effect, the Trust advances facts which support the charge that the directors "failed to establish an information and reporting system reasonably designed to

6

provide...the board with information regarding the corporation's legal compliance and business performance, resulting in liability." *Tower Air*, 416 F.3rd at 238. See also *In re Caremark Int'l Inc. Derivative Litigation,* 698 A.2d 959, 967-970 (Del. Ch. 1996). Such a failure constitutes a breach of good faith by the directors not protected by the business judgment rule. *Caremark*, 698 A.2d at 971. Accordingly, the business judgment rule does not serve as a basis for dismissal of the complaint.

C. *The Exculpatory Clause*

Both Massachusetts and Delaware[4] permit the inclusion in a corporate charter of a provision that eliminates or limits the personal liability of a director for monetary damages for breach of fiduciary duty. The authorizing statutes exclude from such protection a breach of the duty of loyalty and acts or omissions not in good faith. M.G.L. ch. 156B §13(b)(1½); 8 Del. C. §102(b)(7). "Our jurisprudence since the adoption of the statute has consistently stood for the proposition that a Section 102(b)(7) charter provision bars a claim that is found to state only a due care violation." *Malpiede v. Townson*, 780 A.2d 1075, 1095 (Del. Supr. 2001). Stated differently, the Trust must allege facts that establish a breach of the duty of loyalty or bad faith.

Here, it is conceded that the CTC corporate charter contains the statutory exculpatory clause affording the protections for unexcluded breaches. Two questions arise: is this an affirmative defense not properly raised in a Rule 12(b)(6) setting and, if properly raised, does it warrant dismissal.

Courts considering the first issue treat such a clause as an affirmative defense. *Tower Air*, 416 F.3rd at 242; 780 A.2d at 1079. See also *Emerald Partners*, 726 A.2d 1218, 1223-24

---

[4]CTC Communications Corp. is a Massachusetts corporation. CTC Communications Group, Inc. is a Delaware corporation. The exculpatory provision in each statute is substantially the same.

7

(Del. Supr. 1999). However, courts have reached somewhat different conclusions regarding the deployment of the clause in a Rule 12(b)(6) dismissal setting.

In *Tower Air,* the court observed that the exculpatory clause in question "appears to be in the nature of an affirmative defense" first asserted on appeal. The court thus declined to address it on appeal but did note the general proposition that affirmative defenses will not form the basis for dismissal under Rule 12(b)(6). *Tower Air*, 416 F.3d at 242. In *Malpiede,* the court similarly viewed the exculpatory clause as an affirmative defense, outside the complaint and hence, as a general matter, not the basis for a Rule12(b)(6) dismissal. However, the court nonetheless held that, ultimately, the exculpatory clause was properly considered because the plaintiff did not contest its existence, terms, validity or authenticity and thus the dismissal request could be treated (and decided) as a summary judgment request. *Malpiede*, 780 A.2d at 1092.

Here, it is a close question whether the CTC exculpatory clause, though an affirmative defense, should nonetheless be considered in this dismissal context. I elect not to do so for the reason that, although the Trust has not contested the existence, terms, validity or authenticity of the CTC exculpatory clause, the Trust *has* contended that the CTC clause does not afford any protection in a cause of action against directors by a *litigation trust* on behalf of *creditors* where the statutory text speaks quite plainly of personal liability of directors to the *corporation* or its *shareholders*, neither of whom is the claimant or the putative beneficiary of the action. Thus, unlike *Malpiede*, here there is a dispute regarding the applicability of the CTC exculpatory clause, a matter for trial or summary judgment, not dismissal.[5] Accordingly, the CTC exculpatory clause does not serve as a basis for dismissal of the complaint.

---

[5] I note that the allegations of the complaint that I have found overcome the business judgment rule would also seem to overcome the exculpatory clause. However, I expressly decline to rule on that matter and reserve it for later determination, either at trial or on summary judgment. See *Malpiede* 780 A.2d at 1095.

D.      *The Release*

Four of the ten directors seek dismissal on the basis that the Plan has released them. They refer the Court to specific sections of the Plan which they say support their contention. This basis for dismissal is clearly outside the complaint, an affirmative defense, not properly considered in the dismissal setting and bereft of any of the saving considerations attendant upon the deployment of the business judgment rule and the exculpatory clause.[6]  Accordingly, the purported release of the four directors under the Plan does not serve as a basis for dismissal of the complaint.

## Conclusion and Order

The Trust has made allegations in the complaint which, if proved, would establish personal liability of the directors for a breach of their duty of loyalty and good faith to CTC and its shareholders. The presumption of the business judgment rule is rebutted by these allegations. The CTC exculpatory clause and the purported release of the four directors under the Plan are affirmative defenses properly considered at trial or on summary judgment. The dismissal motions are hereby denied.

Date: March 13, 2007                    /s/ Robert Somma
                                        _____
                                        Robert Somma
                                        United States Bankruptcy Judge

---

[6] I note that a reasonable construction of the release language in the Plan would require that the four directors demonstrate that they had obtained the requisite consent to their release by certain Plan constituents. Whether the directors obtained that consent is disputed. Hence, here, too, I expressly decline to rule on the matter and reserve it for later determination, either at trial or on summary judgment.